Case number 14-1282, Xcel Energy Services Inc. Petitioner v. Federal Energy Regulatory Commission. Mr. Spina for the petitioner, Ms. Lufting for the respondent. Good morning. Good morning. May it please the court, my name is Steven Spina. I'm an attorney for the petitioner, Xcel Energy, and I've reserved five minutes for rebuttal. The facts of this case begins on February 1, 2012, when SPP filed with FERC under Section 205 of the Federal Power Act, a change to the SPP's formula rate under its open access transmission tariff. The filing was made to incorporate the proposed revenue requirement of Tri-County into the Southwest Power Pool transmission rates. So is your position that what happened in that first order was basically an unlawful action by the Commission under Section 205? Yes, that is our position. And therefore, it follows that the Commission must do what? The Commission must fix its error. It has the authority under Section 309 of the Federal Power Act to take any actions necessary in order to fix errors, and they should have done that in this case. So the Commission takes the position that it has all of this precedent showing that it cannot give you the relief you want, namely to be put back in the position you would have been in had FERC not made this error. What's your response? Well, first, our response is that they did not follow their obligations under Section 205 of the Federal Power Act because SPP is a FERC jurisdictional public utility, and they made the filing under Section 205. We have argued all along that these are not the rates of a non-jurisdictional Tri-County. These are the rates of SPP, Southwest Power Pool, and they are the ones that filed the rates. The Commission was in error. They admitted that they were in error by the fact that they accepted the rates without suspension or a refund commitment. So as I understand part of the Commission's explanation here, it's that, well, SPP is a nonprofit, so it has no funds available to make refunds, and the Commission would be forced, were it even to assume it had the authority to do so, to allocate the, what shall I call it, the cost of the refunds to the other members of the grid, sort of a windfall for your client to the detriment of everybody else. Well, I would take issue with it being considered a windfall because at the end of the day when the cases proceeded through the system, the facilities that Tri-County sought to include in their revenue requirement were ultimately found by the Commission not to be transmission. So therefore, their revenue requirement, the rate, was zero. Yet they had $1.4 million of ratepayer money that there was no obligation to refund. Now, to your point and to your question. I understand that the users had no obligation, given the FERC finding in the second proceeding, had no obligation to pay, or ought to, let me put it more carefully, ought to have had no obligation to pay. Who should not have had any obligation to pay? The users, the people who use the SPP facilities. Yes, the ratepayer should not have had any obligation to pay because at the end of the day, none of these facilities qualified as transmission. They weren't eligible for rate recovery. And to your point about SPP and its ability to pay, a couple of points. One is that Section 205 of the Federal Power Act, when it's looking at public utilities and the refund obligation, doesn't require any sort of demonstration on the public utility's ability to pay. It has a refund obligation. But to your further point, RTOs are often ordered by FERC to refund money. And they have ways that they do that. They will go to their transmission owners or market participants, and they'll recover the funds that way. They set aside litigation reserves for situations where they feel that there might be some sort of refund obligation. And it's happened in a number of instances. So the idea that an RTO, because it's a not-for-profit, doesn't have any ability. But it seems to me your argument depends on the point you made in your brief, that the Commission didn't raise these claims and its orders rested on 2.4. So it seems to me if we agree with you on 2.4, we have to remand to the Commission for it to, if it is still concerned with these problems, address them. I think that is a fair point, that 2.4 is an issue. They did raise the idea that we did not provide explanation for how an RTO might be able to pay for this. Now, that's not our burden under Section 205. It's not even required by Section 205. But to your point, yeah, they did say that because they had accepted the rate, they had no ability to suspend it. One of the, I guess the argument made by the Commission at this point, that because the Commission doesn't have jurisdiction over Tri-County, there's no way to really equitably order this refund without having some parties have to contribute that really shouldn't have to contribute. Some, I guess, members of the cooperative. Yes, the Commission did seem to struggle with the idea that because Tri-County was a non-jurisdictional entity, that they couldn't order them to pay refunds. But as I said, we had always sought refunds from Southwest Power Pool because they were the first jurisdictional utility. And the notion that Tri-County would not have to pay those refunds, it's not clear to us that SPP of Southwest Power Pool couldn't go and get that money from Tri-County. To our understanding, we don't know that they ever attempted to do that. Was it improper for the Commission to take that into consideration? Take this issue of potential inequities caused by not being able to actually order Tri-County to pay the refund? I do think it was inappropriate for them to consider an RTO's ability to pay, because under Section 205 of the Federal Power Act, that's not one of the requirements, is the ability to pay. The idea of Tri-County being a non-jurisdictional and not being able to require refunds from Tri-County, I don't think it was inappropriate to consider that. I just think it was inappropriate for them not to carry that analysis out. The Commission has said from the very beginning, or the courts have said, and FERC has followed through on this, is that a non-jurisdictional's revenue requirement can be given the full Section 205 review because it's going to become a component of an RTO's rates. A regional transmission organization like Southwest Power Pool, it will become part of their rates. They can do a full Section 205 review. What the courts have said is that, but at the end of the day, they can't require a refund from the non-jurisdictional. But our point all along has been, SPP made this following, under Section 205 of the Federal Power Act, they are a FERC jurisdictional public utility, and therefore a refund should have been required of them. The cases that FERC cites to never speak to that issue about the RTO's refund obligation. You're asking this court if, I guess as your last ditch effort, you're asking us to use our equitable powers. How might our equitable powers be different than FERC's in the sense that Tri-County intervened in this proceeding, and therefore they're a party before us, and we certainly have jurisdiction over them. So does that change the landscape at all? Well, what we argued for was that this court, through its equitable powers, would direct FERC to require SPP to spend and order refunds back to the original filing date of SPP's filing, which was April 1, 2012. That's what we have requested in terms of the court's equitable power, that what they do is to direct FERC to do that. So you're not asking us to order anything of Tri-County? Yeah, our request was that you direct FERC to fix its error so that the consumers, the rate payers that paid this money, could get the appropriate refunds. And you don't want to ask us to order Tri-County to do anything? If you would order Tri-County to pay us $1.4 million, we would accept that, yes. Well, I guess we should clarify on the record, are you asking us to do that? We are asking, well, the relief that we requested in our briefs was that you direct FERC to suspend the rate and order refunds from SPP back to April 1, 2012 in this proceeding. All right, so you're not asking us to do anything with respect to Tri-County? We did not request that relief. All right, fine. No, no, no, we need to be clear on the record what it is you're seeking. All right, would you like to reserve the rest of your argument for rebuttal? The only comment that I would like to make, you all are very familiar with the facts. It's clear from the questions that we've received and the arguments that we've made. But I will reserve the rest of my time for rebuttal. But the one point that I would like to make is that in terms of the court's equitable power to remedy FERC's legal error, we cited to numerous cases where the court has done that, and we would request that you do that here. And I'll reserve the remainder of my time. All right, thank you. Good morning. Good morning, Your Honors. Lisa Loftig for the Federal Energy Regulatory Commission. The court is unable to put the parties in the position that they would have been in but for FERC's error. EXCEL does not ask for FERC to, for this court to get refunds from Tri-County because the court is limited to what FERC would be able to do under the statute. And it's very clear from this court's decision in Transmission Agency of Northern California that FERC cannot order refunds from a non-jurisdictional utility. So this court would likewise be limited to direct refunds from a non-jurisdictional utility. And FERC struggled with what to do with this case. And, you know, EXCEL asked belatedly. EXCEL makes a statement that all along they've asked for refunds from Southwest Power Pool. That is not the case. If you look at their protest that was filed, they asked for FERC to make the filing, without the voluntary commitment, to make the filing effective after the hearing. They don't ask for refunds from Southwest Power Pool. Well, they did after. On rehearing. Right. Their protest was not accepted by the agency. Right. On rehearing, in light of the fact that the rates were made effective, EXCEL developed this idea that FERC could suspend the filing on rehearing subject to refunds by Southwest Power Pool. And the commission decided that it has substantial precedent, which says that... That's those four cases that Kentucky's not paying attention to, with all of which the EXCEL brief distinguishes and distinctions to which you give no response whatever. They're all cases where the objection was out of time. So to suddenly have them applied to cases where there was a perfectly timely objection is really odd. Certainly the commission has thought about the timely objection and whether it could suspend on the hearing. You discussed that in your brief. You just ignored the distinction asserted by EXCEL. Well, I take the position that it was not timely made that the commission could make the refunds subject to payment from Southwest Power Pool. Initially, EXCEL was trying to get the commission to do what it's required to do under Section 205, namely make some decision or determination that these were not unjust and unreasonable rates. Of course. All right? FERC never did that. Right. So then on rehearing, and that's another way to distinguish those cases you cite. In those cases, FERC did take action pursuant to its Section 205 responsibility, and it was dealing with issues raised on rehearing. We don't have that here. Right. And the commission's position is that it, notwithstanding the timely protest, that the commission cannot suspend on rehearing. Let me give you a hypothetical. Yes. Suppose all this has happened up to the first order, through the first order, and there were no need for a process of rehearing, and EXCEL had come here and claimed that what the commission did was unlawful. And we agreed, as in fact, of course, the commission did in its order on rehearing, and we remanded to the commission. The commission, in those circumstances, would be powerless to even inquire. Ito? Arendi? No. The commission has said that when it's acting on an order from a court, it can obviously implement judicial reversals. Why is it different if FERC sees the error of its ways before it gets to court, which is the case here, in terms of the inclusion of these $1.4 million? Sure. The commission has done that and used its powers in the past in the city of Anaheim case, and in that case the commission was reversed, that it could not claim error and then fix its errors without an order from the court. And I think this— I mean, that just doesn't seem to me to correspond with any principles. One thing is that I tried to find if there were any cases where the commission had a rate filing, which it just accepted without the usual process of suspension for a day and then putting it into effect subject to refund, and that order was found to be error. I couldn't find any. Apparently FERC is usually more careful about these things. Well, the cases where we do that are these unique cases where a non-jurisdictional utility is joining a regional transmission organization. I don't see what that may have to do with an exercise of discretion about the remedy. But the idea that that eliminates commission power to provide what it ought to have done in the first instance is amazing to me. I take your point, and if this court wants to find that the commission can suspend a rate on rehearing, then certainly the commission would take that into account. However, the commission has said that its regulation, which states unequivocally that we cannot suspend after an effective date, and we also have Section 313 of the Federal Power Act saying that the filing for rehearing does not stay the effectiveness of an order. You've applied Section 2.4, as we said, in the context of out-of-time objections. Sure. That makes sense, but it makes no sense at all as applied to a timely objection that FERC erroneously disregards. I take your point, and maybe the commission does have the power to do this on rehearing, although I think it would be faced with perhaps a more difficult challenge from Southwest Power Pool if the commission did say on rehearing here, oh, we're going to suspend the rate. I think there was legal risk either way, and so the commission did and provided all the remedy that it felt that it could do in this case, which is using 206. Now, I understand the commission may have been gun-shy given some of the previous decisions by the court, but what I want to understand is you heard me ask counsel for Excel whether or not what happened in SPP 1 was essentially a legal nullity because FERC never complied with its Section 205 responsibilities. And Judge Williams suggests one hypothetical. I mean, I can suggest another hypothetical. 1.4 million is not chunk change, but under the commission's view, it wouldn't matter what amount Excel had had to pay. You couldn't do anything about it, even though the original order resulted in an unlawful rate. The commission takes the position that Congress also considered these equities and made relief prospective under Section 206 of the Federal Power Act. But that's assuming FERC complied with its Section 205 responsibilities. Certainly. And the problem we have here is in weighing the equities, this case is unique from a lot of other cases where, like Calorie Properties and Exxon, where the court is able to put the parties in the position they would have been in but for the error. Here, unfortunately, Southwest Power Pool is the public utility here, and they are not the ones with a windfall to be, you know, turned to Excel. Your orders don't depend on that proposition. They depend on this proposition of a lack of legal capacity. And once that's corrected, then there may be equitable issues that justify denial of Calorie Properties. That's quite a different matter. I think the commission also answered in the alternative here. Where does it provide the answer in the alternative? There's some vague illusions, but there's no effort to reason it through that I can see. Well, if the commission were going to just rest on its inability to suspend our hearing, it could have stopped there. But instead, at JA 535, the commission notes, in addition, Excel's suggested approach would be inconsistent with commission policy. And it cites the Midwest ISO case, which Excel was a party to. And in that case, Excel asked the commission to hold Midwest ISO, another RTO, responsible for refunds and suspension subject to refund. And the commission said, no, that's not what we do. Back to Darrell 2.4. If that's a commission exercise of discretion, it sounds like an abuse of discretion or refusal to exercise discretion. Well, the commission is simply saying that it's been consistent in not suspending these types of filings. Where it's complied with, it's 205. You just don't want to deal with that. That's what I'm having trouble with here. In other words, the commission could just ignore Section 205, let a rate go into effect where a party is paying millions upon millions of dollars. And by the time the commission gets around to issuing its order, years have passed, and then a timely petition for rehearing is filed. And the commission says, well, 206, you can only get prospective relief. That can't be the scheme Congress envisioned. Indeed, Congress envisioned that the commission would exercise its responsibilities under Section 205. That's where I'm having trouble. And I think that William's point about what the rationale of the commission is here, I mean, is equally telling. The commission admitted that it erred, but its error was in letting the filing become effective, not in not suspending the filing. No, I understand. But the problem is, and I do appreciate this, that once we have these RTOs where you have non-jurisdictional entities involved, the commission has had to massage the system it had. And the way it did was through this getting these voluntary commitments or the alternative of suspending, not letting the rate go into effect until the commission finishes its work. But here, that massage didn't work because an error by the commission was committed. And the commission sort of throws up its hands and says, there's nothing we can do about it. I think it was a very difficult case, and the commission was being very cautious and wanted to stay within. So it was just waiting for the court to say, do something? Yes, although I think the commission does give some other reasons why the court should not exercise its equitable power here. I don't know that it's equitable power. I think it's just saying that at a minimum, the decision is unreasoned because it depends on a mistaken assumption of law. That assumes that the commission was mistaken on its suspension ability. But I do think that the commission did give two reasons for why it would not suspend in the alternative. I don't know, there would be no point in the commission noting that SPP is a non-profit entity with no ability to pay. And there would be no point in noting that we don't suspend these types of filings if we were simply resting on our inability to suspend on rehearing. But, for example, as I understand the record, and you're probably more familiar with it than I, the commission didn't explore whether there were litigation reserves that SPP had or anything like that. I mean, we didn't go beyond that simple statement and then the fact that Excel had not proposed to the commission satisfaction an appropriate remedy. Well, if you look at Black Oak, which I recognize was not cited by the commission, the reason the commission does not like to do surcharges on regional transmission organizations is because it's a notice problem. And that ties in also with this court's precedent on when the court exercises equity or uses its equitable powers. And there is a potential notice problem to the members of the Southwest Power Pool. So it's, I mean, there is record evidence that Southwest Power Pool said, and it's at JA-345, Southwest Power Pool says we have no money. Please confirm to us that we can use Section 10.5 of our tariff. But in the Black Oak case, the commission explains that it's inequitable to apply surcharges to members of a regional transmission organization because they are not effectively on notice of their liability. There are a lot of things to be said about this, and it doesn't seem to me this is the place to sift them out. Excel Council made the argument in its brief that if the management of an RTO knows that it's going to face liability, it will be more careful in the future in accepting essentially false costs, as in this case. That seems to me a pretty good argument. You see, I have in front of me a transmission agency of Northern California, which you pointed to in oral argument. That's it. All we hold there is fair authority to order a municipal utility to issue a refund. That's, I mean, that's an interesting background fact, but it certainly doesn't justify your outcome here. And the very fact that you relied on it in the order suggests that you had begun to come to grips with the problem in front of you. You, meaning the commission, not you personally. I think accepting the voluntary commitment from a non-jurisdictional utility provides symmetry with how RTOs are responsible for its other jurisdictional members. If a public utility member of Southwest Power Pool were to make a filing, and maybe it had SPP, Southwest Power Pool, make the filing for them, if there were refunds due, the refunds would not be owed by Southwest Power Pool. They would be owed by the public utility member. We all understand that. That's why we have the voluntary commitment, and we don't hold. Which you didn't do. Excuse me? Which you didn't do. No, we should have, in hindsight, made the rate effective at the conclusion of the hearing. But if you look, even when the commission provided a remedy here in the first re-hearing order, it did not hold Southwest Power Pool responsible for refunds. No, I know it didn't. So the remedy that Excel is asking for, suspension subject to refund, is inconsistent with commission policy. Which leads me to my question, which is that Tri-County didn't have to, but they intervened as a party here. So why can't we order them to make a voluntary commitment at this point? I don't have the case law at my fingertips, but the brief of our interveners cites a case that explains that the court's powers of equity are constrained by FERC's powers of equity. Not to mention the fact that I think the standard is it would do what the commission would have done, and the commission could not have ordered refunds from Tri-County. But that's because the commission didn't have jurisdiction over them, but Tri-County has given us jurisdiction over it. And the statute does say that FERC can essentially try to issue any order in its equitable jurisdiction to basically try to put the parties back in the place where they were. So if you put those two things together, why couldn't we order that? Well, since Excel did not ask for that remedy, I would ask that if the court were going to consider doing that, maybe supplemental briefing might be in order to sort of further develop the court's powers if the court wanted. But in closing, I just would like to note that I believe this case is distinguishable from other cases where this court has used equitable powers. To the extent the court feels it doesn't need to use its equitable powers and it remands to the commission, I do think the commission did explain in the alternative why it would not have done what Excel asks here. And I just would like to note that Excel did have some, although imperfect, other remedies available to them, and they did in fact... You're talking about the state lawsuit? I'm talking about filing a complaint under Section 206 of the Federal Power Act. Yes, but you know that that... It's an imperfect remedy. Yeah, and incidentally, if you go back to Public Utilities Company, I guess, of Colorado versus FERC, you see that there what we look for is the point at which the provider, in that case gas producers, would have been aware that the charge was in jeopardy. And surely, at the end of the first proceeding here, SPP should have been aware that the charge was in jeopardy. I'm glad you mentioned that case because I actually think there's a lot of symmetry between that case and what Excel is asking for here. In that case, this court denied the request to hold the pipeline responsible as guarantor to the extent any gas producer doesn't pay refunds. And I think the Southwest Power Pool is very similarly situated to the gas pipeline in that case because gas producers are not jurisdictional to FERC, but the pipeline is. So the court's decision in that case... Weren't the gas producers jurisdictional in that era? I think they were, under Phillips Petroleum. Perhaps, although I'm not sure why they would have asked for the gas pipelines to be held accountable to the extent a gas producer doesn't pay.  I think the money prefers two possible pots over one. That's probably an adequate explanation. Perhaps. Are there any further questions? Thank you. Thank you. All right. Counsel for petition? Thank you. I'd just like to make a couple of points. First of all, I would disagree with a couple of things that FERC counsel said. One is that we believe clearly that this court can direct FERC to fix its error, and we cited to numerous cases where that happened. The other is that the reference to Black Oak and the case that was decided, the Black Oak case, in that case, this court recognized that an RTO as a not-for-profit may have to seek refunds or monies from its members. So it recognized that that was one avenue that is available to RTOs, and as we've discussed, there are other avenues available to them as well. So my last point that I would like to make is just that, and we've fleshed this out quite a bit in our discussion, but we believe it is necessary in this case to place customers back in the position they would have been in if not for FERC's legal error. And we believe the court can use its authority to direct FERC to impose a suspension and refund condition upon this SPP rate. And while they contend that their hands are tied, we don't believe that this court is so limited. They committed a legal error because of their perceived limitations on their authority. They believe they couldn't provide an appropriate remedy, and we believe this court can fix that error. Thank you. We'll take the case under advisement. Thank you.
judges: Rogers, Wilkins, Williams